Ms. Quick calling double duty today. You may proceed. May it please the court. The defendant Katie Boll pled guilty to conduct that involved tampering with or otherwise misusing medication during her years as a nurse. The parties agreed that Ms. Boll's offense conduct involved 14 vulnerable victims, leading to a two-level increase under 3A1.1B1. However, the government objected to the failure to assess an additional two-level increase because it believed 14 victims qualified as a large number. The district court sustained that objection, and this is the sole challenge on appeal. Now, before getting into the heart of the legal issue, I think it's necessary to address the standard of review. This is a legal issue. This is a question of guideline interpretation, so the standard of review is de novo. There are no factual findings that this court needs to review or determine. The parties generally agree there's 14 victims, and they were vulnerable. The question for this court is a legal one. Counsel, what about our Anderson case that says anything to do with this is a clear error standard? Do you agree with Anderson? I think it's in the briefs. Go ahead. Yes, Your Honor. So Anderson only actually addressed whether the victims were vulnerable, and the court said there whether someone's vulnerable, that's a factual determination. And I looked, kind of thinking I might get that question, looked at some of the case law from other circuits, and the Day case, it's an 11th case, it's 405F3D1293, kind of made this distinction in that the question of whether a victim is vulnerable, that's for clear error because that's a factual determination. Okay, and you think the statement in Anderson is too broad, and if you look at the cases, other cases in our circuit, it is just too broad. I don't know if I would say it's too broad, but it's not. Counsel, it says six words or eight words, review vulnerable victim determinations for clear error, period. I think it might be too broad, might be a way to say it. The idea is they were just addressing vulnerability, and I agree that that's a factual determination. Later in the Anderson case, at the end of the opinion, they do say this is a question of guideline interpretation, and many cases in the Eighth Circuit say when it's a question of guideline interpretation, that's to know the overview. So how do we figure out to get to the guidelines interpretation? I got to say, there are so many circuits all over the board here, I don't know, you know, which one's right, which one's wrong. What does a large number mean? I think that the district court was correct in that it varies on the crime, and it varies on the criminal conduct. What's going to be a large number for a murder is different than what a large number would be for a telemarketing fraud scheme. It's not going to be, unfortunately, a one size fits all number. And I think what we can do is look to start with the case law and use that as a guidepost. One thing I didn't highlight in my brief is, I think is also instructive, is the amendment from the commission adopting this two-level increase. There, the discussion was that the motivation for this additional two-level was telemarketing schemes that were aimed at the elderly. This is in the late 90s, and that's what really pushed and motivated this additional enhancement. And that, you know, hundreds of people, these massive telemarketing schemes, that's consistent with much of the case law that's cited in the brief. Admittedly, it's a bit, the case law's a bit all over the place, but there are the cases where it's, you know, hundreds of victims, telemarketing schemes, these widespread offense conduct aimed to hit as many people as possible. But that's a large number. So just quick, you sort of concede that this shouldn't be a bright line rule, and it should sort of depend on the crime charged. And my gut is that that's right. Yes. But wouldn't this be closer to the murder situation, you posit, than the telemarketing scheme? I disagree. You know, stealing medicine from the patients, that kind of thing? I disagree, Your Honor. And those kinds of, in the telemarketing cases, and I think that's more akin to some of the other cases, I think, both parties cite, where, that involve health care, where someone is either misusing someone's information or overly prescribing opioids for financial gain or whatever it might be. This is just one nurse who has a drug addiction, and she is, you know, misusing medication to feed that addiction. She's not a part of some big, large criminal conduct, criminal conspiracy where she's taking pills to sell or working for financial gain. And I think what's most destructive here is the percentage of patients. She saw, in her most recent appointment, she would be responsible for almost 100 patients at a time. There's only 14 vulnerable victims in this case. That's not even 20% of any, the number of patients Ms. Fole was responsible for in one shift. And the offense conduct spanned three years. And much of her conduct, while illegal, didn't necessarily involve taking medication from patients. So you mean if you're in a small city and do something, it could just be one or two people, huh? If she didn't see many patients. No, suppose you're in just a small town, a small nursing home, it could just be one or two people. That's where your argument goes, right? If you're doing percentages? I believe so. Yes, okay. And now, so my answer is, what about the interpretation part of this being setting a minimum? As you notice, I noticed that some of what the other courts seem to do is they set a minimum number, 10, spoiler alert, they set a minimum number, and they seem to apply that in the small town and in New York City and L.A., right? Right. I don't think... Is that what you advocate or not? No, I don't think it depends on where you are. I think it would depend on the scope of the conduct that is involved in that specific defendant's case. If there's like one of the cases that's... But don't dodge the minimum part. You're effective. Don't dodge the minimum. Should we set a minimum though? I don't think we should set a specific minimum. I think that's a dangerous path to go down. Your counsel sounds to me like we're back to some kind of clear error review here real quickly. Look at all the circumstances and does the district judge make a clear error? We're not back to legally interpreting anything. Unless we say legally, it means whatever the judge says. I don't know. Tell me. I don't think that courts should be saying, like the district court judge did here, in a misuse of pills case, it's 10. And that's 10. Because that's taking the role of the pulling it out of thin air. No, counsel. You look at all the other guidelines. You know the arguments here. Right. And I think the other guidelines, if anything, are instructive of the fact that 10 shouldn't be considered a large number. One of the cases that the government cites, or we both cite, is involuntary servitude. And that there's an upward departure if there's 10 or more victims of involuntary servitude. I would not put misusing medication in the same category as involuntary servitude or slavery. And the fact that the commission could put a minimum number for those kinds of offenses and chose not to here indicates that they didn't want it to be a one-size-fits-all kind of determination. And this kind of legal analysis that the court must do is no different than reasonable suspicion. You know, we don't have these necessarily bright-line rules, but based off of the case law and the framework that we have, it indicates that 14 is on the low end. And we have these cases where it's really hundreds of victims. And that's what this enhancement was meant to capture. So what do we look at then? What do we look at? See, I think, when I'm thinking about it, large number is a relative term. So when I think 14 out of 100, gosh, that's a lot. I mean, to me, that's a lot. That's a large number. So what factors would you have us look at in determining whether it's a large number? I would say if it's not over, you know, if you're not even talking about over 50 percent of the patients, that, to me, doesn't seem like a large number, especially over the time three years as a nurse where the government, you know, the offense conduct of misappropriating medication occurred. And also the context of the crime, I think, gives us, gives some guidance. I mean, these other cases, even the healthcare fraud cases where the doctor is over-prescribing or the healthcare professional, you know, stole people's information, you know, using it as part of this overall bigger criminal conduct, whether to make money, and it's a large-scale fraud. Here, it's one nurse who is misusing medication for her own habit. This isn't some large, large conspiracy like we see in the other cases that have applied this enhancement. If there are no further questions, I would reserve the remainder of my time. Very well. Mr. Reiner, the court will hear from you. Thank you, Your Honor. To get at the court's question, I think Anderson says what Anderson says. I mean, it says that the court reviews the vulnerable victim determinations, not determination, but in plural, for clear errors. I think it really is a clear error. And below, the district court made it not as a matter of law, but as a clearly erroneous, as a fact. Did you read the Bolt case counsel that's cited there and the rest of the Anderson opinion? I did. Okay, good. But they make it sound like it's about the vulnerable part, like your opposing counsel said, right? But I think the issue becomes, if the court makes a bright-line test, which some courts have done, you know, then you get 10. If you're over 10, you're guaranteed to have a high number. If you're less than 10, you're guaranteed not to ever, even in the context of, for instance, it was a three-year course of conduct. But from 2016 through 2017, through 2018, she was having only institutional victims. I thought you were going to talk a little more about the standard review. I just have a follow-up question. If we're talking about the meaning of what a large number is, what does a large number mean? What is the interpretation of those two words? How on earth can that be anything but de novo? Because I think it's contextual. As the court pointed out, actually, Your Honor, as you pointed out earlier, you know, when you look at 100 people as a potential victim pool, 14 seems like a large number, especially in this type of crime. But you're talking about findings. I agree with you. I mean, on findings, once we've defined it and you're talking about findings, then you're definitely in clear error lane. I just can't figure out how, when we're telling you what the guideline means, how that can be anything but de novo. I should have let you finish. Go ahead. Well, and I think part of the way to answer that question is, and I really hate checklists. As a prosecutor, I hate checklists. I like bright lines. But I think checklists of factors that to consider for a court to say, if you look at these factors, you can find a large number. And I think some of the factors at work here are, this is a hands-on offender. It's a defendant who knew every one of her victims personally. Many of these large-scale frauds, you know, telemarketing frauds or whatever, they don't have hands-on or don't know the victims. And I'll talk about some of the cases in a moment that kind of reached that position. But this defendant had accelerating behavior from institutional victims where she was wasting to steal the drugs to then hands-on offending, where she was actually stealing directly from patients and make sure patients did not get pain medication that they needed and ultimately diluted liquid morphine that was given orally down to where it was less than 1% of its dosage, of its use, for those 14 patients that we were able to identify. And the court found that in the vulnerability side, and these findings all coordinate the large number of age, medical conditions, every person who was in that hospital was deemed was vulnerable by the fact that they were inpatient treatment. They weren't able to care for themselves in outpatient care and couldn't protect themselves from the defendant's crime. So the defendant chose these victims, knew they were all vulnerable, and ultimately did have a total population of, I think, 97 on any given day, but we only caught on that one wing, those 14. Counsel, what do you think? Just a follow-up. I know you're into the facts, but I want to get to the interpretive issue, which is the district court made a legal judgment that it wanted to go to the fraud guideline and compared it to the fraud guideline. And it turns out that there's an interpretive error even with that, because the commentary, the application note, refers to B2B or C, which is 25 or 5 victims that have received substantial financial hardship. But I think the district court just flat misread it, because the 10 is actually not included in that application note. And so what I'm trying to figure out is what do we do with that? It seems like we have an interpretive error here bound up in all this, and what do we do with it? Well, I think the court looked at a number of different guidelines to where you have multiple vulnerable victims or multiple victims where the guidelines say if you have in the court pointed out, if you have multiples, you can go higher under 2G. If you have 10 or more images, you can go higher with plus 2. If you have 10 or more victims of the involuntary servitude, of course, there can be an upward departure for that. So 10 seemed to be a number that the commission used to have ratcheted up or increased punishment or penalty for victims of crimes. But in that exact fraud guideline, the cross reference is actually to 5 or 25, which eliminates the large number. And so, yeah, 10 is one of the numbers, but also we have 5 and 25. So which one do we pick? Well, good point, Your Honor. And that's why I think you have to read all of the guidelines together. And that's where we think 10 seems to be the right number, because other guidelines have used 10 if the court were to come up with a bright line test. But I think the issue you have is this court has found that 7 in Moody as a matter of law is not a large number. So what is a large number when you're dealing with smaller numbers of victims in a crime? In Anderson, that was a wire fraud case with 18 elderly victims, and it was remanded to that was a large number. On remand, the district court found that to be a large number, and ultimately that finding was not reviewed or discussed further in Anderson 2. In Courtney, which is an Eighth Circuit case, 32 patients received diluted cancer drugs from a pharmacist. Eight of the victims were used as a large number. So there wasn't 10, it was just eight of those were particularly vulnerable for whatever reason to get there. Does the record reflect in Courtney's case how many people he prescribed for and watered down the stuff for? The reported case itself does not detail the exact numbers of everything. I'm sure if we dug into the district court record we could find something more, but the appellate decision all I could find was 32 cancer patients received. I realize that. The district court reported opinion and all the other district court documents don't tell us either in Courtney's case how many customers of his pharmacy were affected. I would have to look at the district court's opinion on that to see if it was reported. Now, of course, in Moscow, that was before 3A1.1b2 was in existence in the guidelines. That was an upper departure where you had 33 clients of an attorney in a fraud case, and of course we talked about Kaufman with the involuntary servitude thing, and found 10 patients, and Jane, of course, applied Kaufman with 10. I think, ultimately, when you boil it down, the defendant points out that there are these cases with hundreds and hundreds of victims, and clearly that's a large number. It's kind of like pornography. You know it when you see it. Very large number, you know it. But when you get into smaller populations or smaller potential victims, this is a defendant as a hands-on offender, didn't have access to thousands or hundreds of victims. Access to the victims she had access to. She knew each one of the victims personally. She had personally identified them. She selected them, and she chose how to steal from them. So when you're talking about, you mentioned pornography. If we're talking about child pornography, for example, many cases I've seen over the past two years have involved hundreds, if not thousands, of images. So would every child pornography case involve a large number of vulnerable victims? If there were 500 children, even though that's the typical case? I don't do child pornography cases. I'm kind of an old dope prosecutor, so you're stretching my knowledge there. But I think there are adjustments under Chapter 2 for the numbers of images that you would Fair enough. I'm just trying to get it. You mentioned pornography, which is why I brought it up. I mean, take the telemarketing example. Telemarketing, the typical case involves 500 victims. Is 500 victims a large number when the typical case involves 500 victims? That's really what I'm getting at. You have to look at, you have to remember, in order to get this adjustment for the vulnerable victim, it has to be a large number of vulnerable victims. That vulnerable victim finding is the threshold. Age alone doesn't make you vulnerable. Because you may still be fully witted, be able to be President of the United States when you're 78, or whatever it may be. Older people who have dementia, I'm going to chase you down and have you answer this. You've got to find vulnerability first. Yeah, so older people that have dementia, chasing you down. But the point remains, when you have 500 being the typical offense, and is 500 then a large number in every one of those cases? I would think if the defendant knew that all these, because you've got to require that there's a knowledge requirement. They knew, they selected, they identified, these were the folks who knew or should have known that they were vulnerable. So knew he was, he had the master list of every person with dementia in the United States. And that's the only people that he called to select all of the victims. And every one of the victims had dementia, factually. There, I think, maybe you would have. Every one of those would be with dementia. But it gets narrowed down by the facts that you have of the case. See, I'm out of time. Very well, thank you, Mr. Reiner. Ms. Quick, we'll give you a minute. I think you're muted. Muted. Thank you. The fake and Courtney cases mentioned by the government didn't actually decide vulnerable victims. It wasn't an issue that was actually raised in the appeal. I think in one of the cases, I can't recall which one, it said in dicta that it agreed, in a footnote, but it wasn't actually an issue that was raised, briefed, and decided on appeal. And the final point I want to make is I think it's dangerous to point to, it's hands-on, so that indicates that this is a large number. I think that blurs the line between vulnerability and abuse of trust enhancements with what is a large number. I mean, even in the telemarketing scheme, sure, they're not face-to-face, but they're getting an individual's financial information. In some of these cases we cited, people lost their retirement, their credit was destroyed, and they couldn't get loans. So I think it's kind of blurring the different analysis that go in with these enhancements by looking at the hands-on aspect of it. If there are no further questions, we would ask this Court to reverse the revamp and resentencing. Thank you. Thank you, Ms. Quick and Mr. Reiner. It's an interesting little issue. We will wrestle with it and issue an opinion in due course. Thank you.